J-S32015-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                   :             PENNSYLVANIA
                                   :
              v.                      :
                                   :
                                   :
DONNA SHERBIN                    :
                                   :
            Appellant         :    No. 1777 MDA 2024

Appeal from the Judgment of Sentence Entered October 14, 2020
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0004270-2016

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.:      **FILED: SEPTEMBER 12, 2025**

Donna Sherbin appeals, *nunc pro tunc*, from the judgment of sentence, entered in the Court of Common Pleas of Luzerne County, following her convictions of one count each of aggravated assault,[1] propulsion of missiles onto roadways,[2] simple assault,[3] and recklessly endangering another person (REAP).[4] After review, we affirm.

The trial court summarized the factual history as follows:

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2702(a)(4).

[2] *Id.* at § 2707(b).

[3] *Id.* at § 2701(a)(1).

[4] *Id.* at § 2705.

[Sherbin's convictions] resulted from an incident [that] occurred on October 27, 2016. [Sherbin]'s son[, Charles Sherbin (Charles)] was a passenger in a vehicle[, a silver Jeep,] operated by [Sherbin.]

At approximately 10:00 p.m.[,] Harry Sager was returning to his home in Buttonwood, Hanover Township, Luzerne County, Pennsylvania. While travelling to his residence, [] Sager was operating a 2001 GMC Yukon and playing Pokémon Go. [] Sager realized that he was being followed by a silver Jeep SUV.

The silver Jeep [] followed [Sager]'s vehicle closely so he pulled over to the side of the street. At this point, the silver Jeep [] stopped in a parking lot across the street from where [] Sager pulled over. [] Sager began driving down the street again and the silver Jeep rapidly approached behind him. Although [] Sager turned down an alleyway, he again encounter[e]d the silver Jeep[.] Sager eventually turned into a garage he uses to service vehicles and he observed the silver Jeep [] pull into his garage parking lot[,] blocking the road. [] Sager began driving his vehicle toward the silver Jeep [] to see what the occupants wanted. Once he was about ten feet from the silver Jeep[,] Sager saw that the windows were up, [observed] a bright flash and [saw] a window disappear. He had been shot at through the driver side window of the silver Jeep[.] As [] Sager ducked down behind the dashboard of his vehicle, he heard another gunshot.

[] Sager turned his vehicle around as the silver Jeep left the location of his garage and he saw flashes and [heard] lo[ud] pops coming out of the back of the Jeep. He then called 911, explained that he had been shot at and provided the direction of travel for the silver Jeep[].

Hanover Township Police Officer Thomas Farver received an emergency dispatch call from 911 on October 27, 2016 around 10:00 or 10:15 in the evening. The nature of the dispatch was shots fired from one vehicle into another. Based on the description of the vehicles Officer Farver performed a traffic stop on the silver Jeep[.]

Initially, Officer Farver believed the silver Jeep [] was the vehicle that had been shot. [Sherbin] was the operator of the [] Jeep and she indicated that [Charles] had to shoot at another vehicle. Officer Farver then realized that the shots were fired from

[Sherbin]'s Jeep and he removed two handguns from the vehicle. The driver side window and the rear window had both been shot out.

[Sherbin, Charles] and [] Sager were detained and transported to the Hanover Township Police Station. [Sherbin and Charles] were provided with their *Miranda* warnings at the station and they were unwilling to be interviewed. However, they both made gratuitous statements without being questioned. The statements made by [Charles] indicated that he wanted to shoot the guy in the neck, empty the entire clip into his head[,] and pop his head like a melon. [Charles] also said he would do it again and kill that man.

Seven shell casings were recovered from the silver Jeep [that] was driven by [Sherbin]. Ballistics testing determined that the shell casings were discharged from a Glock .357[,] which was one of the two handguns recovered from [Sherbin]'s vehicle. A bullet was also recovered from the front driver side fender area of [Sager's] GMC Yukon[.] The bullet could not be identified due to its condition.

[At trial, Charles] testified that [Sherbin] continued to follow Sager's vehicle throughout Hanover Township against his advice. After pulling off the side of the street near [] Sager's garage, [Charles] saw an SUV coming [towards] their vehicle[,] so he fired one shot through the driver side window. While [Sherbin] drove away, [Charles] fired another shot at a tire on the SUV. As [] Sager followed [Sherbin and Charles], [Sherbin] told [Charles] to shoot[,] so he fired two more shots through the back window. [Charles] admitted to firing six shots at [] Sager because he felt his life was in danger.

[Sherbin] also testified at trial and acknowledged the encounter with [] Sager. She stated that she was scared to death when [] Sager drove towards her vehicle near his garage. [Sherbin] felt that [] Sager had tried to kill her and [Charles] and she believed the flash of [Charles'] gun saved her life.

At trial, [Sherbin] raised . . . self-defense. She alleged that [Charles] acted in defense of her, or himself, when he fired shots at [] Sager. After three days of trial, the jury found [Sherbin] guilty of [the above-mentioned offenses.]

Trial Court Opinion, 2/28/25, at 1-3.

On October 2, 2020, the trial court sentenced Sherbin to an aggregate period of 18 to 144 months' incarceration. Sherbin filed a timely post-sentence motion.[5] On October 14, 2020, the trial court *sua sponte* issued an amended sentencing order that corrected a clerical error and properly referenced that Sherbin was convicted of propulsion of missiles onto a roadway.[6] **See** Amended Sentencing Order, 10/14/20, at 1.

While Sherbin's post-sentence motion was pending, her counsel filed a notice of appeal to this Court, which was docketed at 1541 MDA 2020. This Court issued a rule to show cause directing Sherbin to explain why her appeal should not be quashed as prematurely filed. **See** Order, 1/11/21, at 1 (explaining notice of appeal filed while post-sentence motion pending is premature). Sherbin filed no response and this Court quashed her appeal. **See** Order, 2/8/21, at 1. On February 11, 2020, the trial court denied Sherbin's post-sentence motion.

---

[5] Sherbin's post-sentence motion was filed 11 days after the imposition of her judgment of sentence on October 13, 2020, which was outside the 10-day filing deadline as set forth by Pa.R.Crim.P. 720. However, October 12, 2020 was a holiday and, thus, Sherbin's post-sentence motion was timely filed. **See** 1 Pa.C.S.A. § 1908 ( "[w]henever the last day of any such period shall fall on . . . any day made a legal holiday by the laws of this Commonwealth or the United States, such day shall be omitted from the computation").

[6] In the October 2, 2020 sentencing order, the trial court had cited to the wrong subparagraph of subsection 2707. **See** Sentencing Order, 10/2/20, at 1.

On August 16, 2023, Sherbin filed a *pro se* motion titled "Petition for Reconsideration under the Recidivism Risk Reduction Incentive Act," which the trial court construed as a Post Conviction Relief Act (PCRA) petition. **See** 42 Pa.C.S.A. §§ 9541-9546. On August 31, 2023, Sherbin filed a second *pro se* motion titled "Motion for Extraordinary Relief: Motion to Vacate and Dismiss: Rule 600(E)," which the trial court also construed as a PCRA petition.

The PCRA court appointed counsel who, on December 4, 2023, filed an amended PCRA petition. In her amended PCRA petition, Sherbin argued that her prior counsel rendered *per se* ineffective assistance by filing a premature notice of appeal, which this Court quashed, and by failing to file a corrected notice of appeal after the trial court denied her post-sentence motion. **See** Amended PCRA Petition, 12/4/23, at 4-6. On January 10, 2024, the Commonwealth filed a response in which it agreed that Sherbin had been abandoned by her direct appeal counsel and that her direct appeal rights should be reinstated. **See** Commonwealth's Response, 1/10/24, at 1-2.

On November 4, 2024,[7] after a hearing, the PCRA court reinstated Sherbin's direct appeal rights *nunc pro tunc*, and Sherbin has now filed a *nunc pro tunc* notice of appeal. Both Sherbin and the trial court have complied with Pa.R.A.P. 1925. Sherbin raises the following claims for our review:

> 1. Whether the evidence was insufficient to establish accomplice liability under 18 Pa.C.S.[A.] § 306(c)?

---

[7] We note that there were several defense delays that appear to be due to Sherbin changing PCRA counsel and new PCRA counsel requesting postponements for calendar conflicts.

2. Whether the verdict was against the weight of [the] evidence regarding intent to facilitate crimes?

3. Whether prosecutorial remarks about defense strategy required [a] mistrial?

Brief for Appellant, at 7.

In her first claim, Sherbin argues that her convictions are based entirely upon accomplice liability and that the Commonwealth failed to present sufficient evidence to prove beyond a reasonable doubt that she possessed the requisite intent of "promoting or facilitating the commission of each specific offense." *Id.* at 12-13. In particular, Sherbin argues that the Commonwealth failed to demonstrate that she intended to aid or promote the commission of the underlying offenses. *See id.* at 13. Additionally, Sherbin asserts that the Commonwealth failed to establish that she solicited, aided, or agreed to aid Charles. *See id.* Sherbin posits that "there was no evidence presented at trial that [the] use of a weapon was ever discussed by [] Sherbin and [Charles]." *Id.* at 14. Sherbin further alleges that the Commonwealth failed to prove that she intended to aid in Charles' attempts to cause serious bodily injury or bodily injury to Sager. *See id.* at 14-16. Sherbin contends that her actions of merely driving the silver Jeep and attempting to get Sager's license plate do not "automatically equate" to intent. *Id.* at 16-17. We disagree.

Our standard of review of a claim challenging the sufficiency of the evidence is as follows:

> [W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not [re-]weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated[,] and all evidence actually received must be considered. Finally, the [trier] of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

***Commonwealth v. Smith***, 97 A.3d 782, 790 (Pa. Super. 2014) (citation omitted).

A person commits aggravated assault when she "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." 18 Pa.C.S.A. § 2702(a)(4).

A person commits the crime of propulsion of missiles onto a roadway when she "throws, shoots, drops or causes to be propelled any solid object, from an overpass or any other location adjacent to or on a roadway, onto or toward said roadway[.]" ***Id.*** at § 2707(b).

A person commits the crime of simple assault when she "attempts to cause or intentionally, knowingly[,] or recklessly causes bodily injury to another[.]" ***Id.*** at § 2701(a)(1).

A person commits the crime of REAP when she "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." *Id.* at § 2705.

In the instant matter, there is no question that Sager did not suffer actual serious bodily injury or bodily injury. Thus, Sherbin's convictions turn on whether Charles, her co-defendant, attempted to cause serious bodily injury or bodily injury and, further, whether Sherbin was guilty of those offenses under accomplice liability.

The Crimes Code defines accomplice liability, in relevant part, as follows:

**§ 306. Liability for conduct of another; complicity**

**(a) General rule.--**A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable or both.

**(b) Conduct of another.--**A person is legally accountable for the conduct of another person when:

(1) acting with the kind of culpability that is sufficient for the commissions of the offense, he causes an innocent or irresponsible person to engage in such conduct;

(2) he is made accountable for the conduct of such other person by this title or by the law defining the offense; or

(3) he is an accomplice of such other person in the commission of the offense.

**(c) Accomplice defined.--**A person is an accomplice of another person in the commission of an offense if:

(1) with the intent of promoting or facilitating the commission of the offense, he:

(i) solicits such other person to commit it; or

(ii) aids or agrees or attempts to aid such other person in planning or committing it; or

(2) his conduct is expressly declared by law to establish his complicity.

**(d) Culpability of accomplice.--**When causing a particular result is an element of the offense, an accomplice in the conduct causing such result is an accomplice in the commission of that offense, if he acts with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense.

18 Pa.C.S.A. §§ 306(a)-(d).

Our Supreme Court has explained:

In order to sustain a conviction on accomplice liability, the Commonwealth must demonstrate that an individual acted with the intent of promoting or facilitating the commission of an offense and agrees, aids, or attempts to aid such other person in either planning or committing that offense. . . . [A] shared criminal intent between the principal and his accomplice may be inferred from a defendant's words or conduct or from the attendant circumstances.

*Commonwealth v. Le*, 208 A.3d 960, 969 (Pa. 2019) (citations omitted).

Interpreting subsection 306(c)(1), this Court has observed that "promoting" the commission of an offense means "contribut[ing] to [its] progress or growth," while "facilitating" means "mak[ing] the commission of a crime easier" or "mak[ing] it easier for another person to commit a crime." *Commonwealth v. Kimbrough*, 872 A.2d 1244, 1252 (Pa. Super. 2005) (citation omitted).

"Accomplice liability requires **only aid**, **not an agreement**." *Commonwealth v. Jordan*, 212 A.3d 91, 95 (Pa. Super. 2019) (citation

omitted, emphasis added). "Accomplice liability can be established by circumstantial evidence." *Id.* (citation omitted).

> [A] defendant cannot be an accomplice simply based on evidence that he knew about the crime or was present at the crime scene. There must be some additional evidence that the defendant intended to aid in the commission of the underlying crime, and then did or attempted to do so. With regard to the amount of aid, it need not be substantial so long as it was offered to the principal to assist him in committing or attempting to commit the crime.

*Commonwealth v. Barnes*, 871 A.2d 812, 822 (Pa. Super. 2005) (citation omitted); *see also Commonwealth v. Davalos*, 779 A.2d 1190, 1194 (Pa. Super. 2001) ("driver of a getaway vehicle can be found guilty as a co-conspirator if it is reasonable to infer that he was aware of the actual perpetrator's intention").

Instantly, the trial court addressed Sherbin's claims as follows:

> The previously summarized facts unquestionably establish [Sherbin]'s guilt beyond a reasonable doubt on aggravated assault, propulsion of missiles, simple assault[,] and [REAP]. [Sherbin] followed [] Sager throughout various locations in Hanover Township with her son in the vehicle [] knowing that he possessed a handgun. During the encounter with [] Sager, [Sherbin told] her son to shoot and [Charles] complie[d] by firing two shots through the back window of the silver Jeep [] at [Sager]. A total of seven shots were fired by [Charles] and one struck the 2001 GMC Yukon . . . operated by [] Sager. [Sherbin] intended that the crimes of aggravated assault, propulsion of missiles, simple assault, and [REAP] occur and she solicited, commanded, encouraged [and at times] requested that [Charles] commit them in addition to aid[ing] him in committing them. There was more than sufficient evidence presented by the Commonwealth to establish [Sherbin]'s guilt on all four offenses beyond a reasonable doubt as an accomplice.

Trial Court Opinion, 2/28/25, at 6.

- 10 -

Based upon our review of the record, we agree with the sound reasoning of the trial court. Indeed, it is clear that Sherbin and Charles followed Sager, at night, throughout Hanover Township, before Charles began shooting at Sager. Further, Charles stated that he wanted to "shoot that guy in the neck," and "empty the whole clip into that guy's head" and "pop his head like a melon," and that he would do it again and kill Sager. **See** N.T. Jury Trial, 9/23/20, at 213-14 (Officer Richard Andres testifying to Charles' multiple unprovoked statements while in holding cell); **see also** Trial Court Opinion, 2/28/25, at 3. Moreover, Charles testified that Sherbin **followed Sager against Charles' advice**, and that **Sherbin told Charles to shoot at Sager**. **See** N.T. Jury Trial, 9/23/20, at 236-41 (Charles testifying he repeatedly asked Sherbin not to follow vehicle); **id.** at 245 (Charles testifying Sherbin told him to continue firing). Therefore, we conclude that the Commonwealth presented sufficient evidence of each offense and of Sherbin's accomplice liability. **See Smith**, **supra**; **see also Davalos**, **supra**. Accordingly, Sherbin is entitled to no relief.

In her second claim, Sherbin challenges the weight of the evidence for each of her convictions. **See** Brief for Appellant, at 16-18. However, Sherbin has failed to preserve this claim for our review and, thus, it is waived. Notably, Sherbin's brief does not indicate where her weight of the evidence claim was preserved before the trial court and our review of the record reflects that it was not preserved. **See** Pa.R.Crim.P. 607(A) (weight of evidence claim must be preserved orally prior to sentence, in written motion before sentencing, or

in timely post-sentence motion); *see also Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa. Super. 2012) ("Failure to properly preserve the [weight] claim will result in waiver[.]").  We observe that Sherbin's October 13, 2020 post-sentence motion states only that the "[v]erdict is strongly against the weight of the evidence."  Post-Sentence Motion, 10/13/20, at 6 (unpaginated).  However, the rest of Sherbin's post-sentence motion fails to specify how, why, or in what manner the verdict was against the weight of the evidence.  *See id.*  Rather, Sherbin's post-sentence motion focuses almost exclusively on her bail request due to the COVID-19 pandemic.  *See id.* at 1-6 (unpaginated).  Thus, we conclude that this single sentence does not adequately preserve Sherbin's weight claims and, accordingly, they are waived.[8]

_____

[8] Even if Sherbin's weight challenges were not waived, we would afford her no relief.  Our standard of review is well-settled.  "Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence."  *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) (citation omitted).  Where the trial judge has had the opportunity to hear and see the evidence presented, "an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination[.]"  *Id.* (citing *Commonwealth v. Farquharson*, 354 A.2d 545 (Pa. 1976)).  A challenge to the weight of the evidence is one of the least assailable reasons for granting or denying a new trial.  *See Widmer*, *supra*.

Nevertheless, a trial court's exercise of discretion is not unfettered.  *See id.*  The "propriety of the exercise of discretion in such an instance may be assessed by the appellate process when it is apparent that there was an abuse of that discretion."  *Id.*  Moreover, the trier of fact, "while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence."  *Commonwealth v. Britton*, 134 A.3d 83, 86 (Pa. Super. 2016).
*(Footnote Continued Next Page)*

In her third claim, Sherbin contends that the trial court erred when it did not grant a mistrial based upon the prosecutor's inappropriate comments during opening and closing arguments. *See* Brief for Appellant, at 18-20.

At trial, Sherbin did not object to any of the comments she now claims warrant relief and, accordingly, this issue has not been preserved for our review.[9] *See Commonwealth v. Ali*, 10 A.3d 282, 293 (Pa. 2010) (failure to object to prosecution's comments waives prosecutorial misconduct claims) (citing *Commonwealth v. Tedford*, 960 A.2d 1, 28-29 (Pa. 2008)). Accordingly, this claim is waived.

---

Instantly, the trial court concluded that the Commonwealth's witnesses were credible and that Sherbin's claim of self-defense was wholly incredible. *See* Trial Court Opinion, 2/28/25, at 8. Further, the trial court stated that it was "anything but shocked by the jury's verdict" where the "weight of the evidence overwhelmingly established [Sherbin]'s guilt." *Id.* We observe that the jury is free to believe all, part, or none of the evidence and, after reviewing the record, we conclude that the trial court did not abuse its discretion in denying Sherbin's weight claims. *See Widmer*, *supra*. Accordingly, Sherbin is entitled to no relief.

[9] We note that, at trial, **Charles' counsel** objected to the prosecutor's comments, but only requested a curative instruction. *See* N.T. Jury Trial, 9/23/20, at 415-16. Our review of the record reflects that Sherbin's counsel did not join in this objection or otherwise request a mistrial. Further, the trial court agreed with Charles' counsel and gave the following curative instruction:

> Members of the jury, I just want to give you a curative instruction at this point. Neither defendant has an obligation at all to provide any type of defense to the Commonwealth prior to trial. So you understand that. There's no burden upon the defense at all to provide any information to the Commonwealth regarding what their defense in any case would be prior to trial.

*Id.* at 417.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/12/2025